## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JEREMIAH J. ARAGON,

    Plaintiff,

  -vs-                                                                       No. Civ. 07-0737 LH/ACT

CITY OF ALBUQUERQUE, D. MOORE, LUCAS TOWNSEND,

    Defendants.

### MEMORANDUM OPINION

**THIS MATTER** comes before the Court on Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion") (Docket No. 32), filed July 31, 2008, and Defendant Townsend's Motion for Summary Judgment ("Defendant Townsend's Motion") (Docket No. 34), filed September 10, 2008. The Court, having reviewed the Motions, the memoranda of the parties, and the applicable law, and otherwise being fully advised, finds Plaintiff's Motion is not well taken and will be **denied** and Defendant Townsend's Motion is well taken and will be **granted**.

This suit stems from events that took place on Saturday, May 20, 2006. Responding to a complaint from Cathy Gonzales that her seven-year-old granddaughter, "J. G.," had not been brought to her pursuant to a court custody order, Albuquerque Police Officer Lucas Townsend went to Jeremiah J. Aragon's home, where "J. G." lived with her mother, Krupskaya Ugarte, Aragon's wife. Officer Townsend knocked on the door of the second-floor apartment and spoke to "J. G." and Mr. Aragon. After "J. G." got her shoes, Officer Townsend took her downstairs, where they came

upon Ms. Ugarte. In the course of their encounter, Officer Townsend decided to arrest Ms. Ugarte, who began flailing around and screaming as he attempted to handcuff her. Ms. Ugarte continued to struggle and scream after being handcuffed and Officer Townsend had to force her to the ground.

During this altercation, Mr. Aragon and Ms. Ugarte's father, Jamie Ugarte, were leaning over the upstairs balcony, pointing and shouting at Officer Townsend, protesting his treatment of Ms. Ugarte. Officer Townsend contends both men were yelling profanities. While it is uncontested that Mr. Ugarte did so, Mr. Aragon alleges that he did not and maintains that the only discernable statements by him on the belt audiotape recorded by Officer Townsend during these events are questions --- "What have we done wrong?"

Both Mr. Aragon and Mr. Ugarte started down the stairs, but they returned to the balcony when Officer Townsend threatened to pepper spray them[1] and ordered them not to descend further. Officer Townsend felt threatened by their protests, and describes Mr. Aragon's disorderly conduct as consisting of yelling, shouting, leaning over the railing, pointing, and his attitude.

Other people at the complex also were observing the arrest of Ms. Ugarte. A man on the ground floor, looking very angry, tried to climb over his porch railing, but two women held him back.[2] Officer Townsend called for assistance, using Code 2 - where officers run lights and sirens to respond more quickly. By this time, a crowd had gathered. Officer Townsend saw at least a half

---

[1] Although Plaintiff apparently denies Officer Townsend's Statement of Undisputed Facts ("SUF") No. 4, in support of his Motion for Summary Judgment (*see* Pl.'s Resp. Def. Townsend's Mot. Summ. J. ("Pl.'s Resp.") (Docket No. 37) at 3), he is unresponsive to the substance of Officer Townsend's fact and refers only generally to the audiotape and the record, but to no other specific, admissible evidence in opposition. Therefore, the Court accepts Officer Townsend's rendition. *See* FED. R. CIV. P. 56(e)(2) ("Opposing Party's Obligation to Respond. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial.").

[2] Def. Townsend's Mot., SUF Nos. 5 and 6. Plaintiff does not respond at all to Fact No. 5 and states only a general denial to Fact No. 6 (*see* Pl.'s Resp. 3). *See supra* note 1.

dozen people out of their apartments, milling around behind him on the other side of the parking lot and some were walking towards him. Other people from the opposite apartment complex also were out on their balconies watching the situation and another man came down the stairwell, almost to the bottom.[3] Pepper spray in hand, Officer Townsend warned him he would spray him if he took another step and told him to go back upstairs.[4]

Officer Moore arrived on the scene at about 6:15 p.m. At that time, Officer Townsend was detaining Ms. Krupskaya and he instructed Officer Moore to arrest Mr. Aragon. Officer Moore went up the stairs, but lost sight of Mr. Aragon as another officer arrested Mr. Ugarte on the balcony. Officer Moore told Mr. Aragon to open the locked door of his apartment and kicked the door when he did not do so. Officer Moore then saw Mr. Aragon through a sliding glass door to the apartment and, finding the door open, entered the apartment, grabbed Mr. Aragon and pulled him outside, and placed him under arrest.

Officer Townsend charged Mr. Aragon with disorderly conduct. Mr. Aragon subsequently was acquitted of the criminal misdemeanor charge in Metropolitan Court.

On June 19, 2007, Plaintiff filed his Complaint Under 42 U.S.C. Section 1983 for Recovery of Personal Injury Damages ("Complaint") in the Second Judicial District Court of the State of New Mexico. (*See* Notice Removal, Ex. A (Docket No. 1), filed Aug. 1, 2007.) Plaintiff sued the City of Albuquerque and Albuquerque Police Officers D. Moore and Lucas Townsend, bringing four

---

[3] Def. Townsend's Mot., SUF No. 10. Again Plaintiff states only a general denial (*see* Pl.'s Resp. 3). *See supra* note 1.

[4] *Id.*

claims: "Count I - Fourth Amendment Claim (Search of Home),"[5] against Officer Moore; "Count II - First Amendment Claim (Retaliation for Protesting Police Activity)," against both officers; "Count III - Fourth Amendment Claim (Wrongful Arrest)," against both officers; and "Count IV - Municipal Liability," against the City of Albuquerque. (*Id.*)  Defendants removed this action to federal court on August 1, 2007. Plaintiff now moves for partial summary judgment against Officers Moore and Townsend on Counts I and III of his Complaint, asserting that his arrest and the entry into his home violated his Fourth Amendment rights. Officer Moore did not respond to Plaintiff's Motion. Officer Townsend responded in opposition to the Motion and also moves for summary judgment on grounds that he is entitled to qualified immunity.

Summary judgment "should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  In applying this standard, the court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

When a defendant asserts qualified immunity, however, the plaintiff "must satisfy a heavy two-part burden, showing that (1) the defendant violated a constitutional or statutory right and (2) the right was clearly established at the time of the defendant's unlawful conduct." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008). The Court "has discretion to determine 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the

---

[5] Although Plaintiff titles Count I as addressing a search, it is clear that his claim is for Officer Moore's alleged illegal entry of the home.

circumstances of the particular case at hand,'" *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Pearson v. Callahan*, ___ U.S. ___, ___, 129 S. Ct. 808, 818 (2009)), but when addressing the first prong, it construes the facts "in the light most favorable to the plaintiff," *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009). If the plaintiff meets the two-part test, the defendant then bears "the traditional burden of the movant for summary judgment—showing 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)).

The Fourth Amendment "protects the right of individuals to be free from improper arrest and detention." *Buck*, 549 F.3d at 1281 (citing U.S. CONST. amend. IV). A warrantless arrest violates the Fourth Amendment unless it is supported by probable cause. *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008). Thus, a defendant is entitled to qualified immunity with regard to a warrantless arrest, "if a reasonable officer could have believed that probable cause existed to make the arrest[,] . . . if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (internal quotations and citations omitted). This "inquiry 'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest,'" considering "the totality of the circumstances taking into account both inculpatory as well as exculpatory evidence." *Buck*, 549 F.3d at 1281 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). Qualified immunity "insulates the defendant who reasonably, albeit mistakenly, concludes that there is probable cause." *York*, 523 F.3d at 1210. Thus, "the 'validity

of the arrest does not depend on whether the suspect actually committed a crime.'" *Buck*, 549 F.3d at 1281 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)).

Officer Townsend maintains that he had probable cause, or at least arguable probable cause, to charge Mr. Aragon with disorderly conduct. In order to proceed, Mr. Aragon must prove that Officer Townsend lacked probable cause. *Id.*

As provided in New Mexico law, "Disorderly conduct consists of . . . engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace . . . . Whoever commits disorderly conduct is guilty of a petty misdemeanor." N.M. Stat. Ann. § 30-20-1. Disorderly conduct must meet two requirements: first, that "the conduct itself fall into one of the categories enumerated in the statute by being violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly;" and second, "that it 'tend to disturb the peace,'" measuring "the potential effect of the conduct on others." *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) (quoting *State v. Oden*, 82 N.M. 563, 564, 484 P.2d 1273, 1274 (Ct. App. 1971)). Additionally, "where the allegation of disorderly conduct is premised on the effect of a defendant's expression on others, New Mexico law requires that the evidence, viewed in the light most favorable to the defendant, show that his expression 'was likely to incite the listeners to breach the peace.'" *Id.* at 1157 (quoting *State v. Hawkins*, 128 N.M. 245, 248, 991 P.2d 989, 992 (Ct. App. 1999)). In such situations, "New Mexico courts have consistently focused on the potential for conduct to cause violence or other serious public disruption," but "'the mere fact that people may have heard [an individual's expression], however loud or offensive [it] may have been, is insufficient to support a charge of disorderly conduct.'" *Id.* (quoting *Hawkins*, 128 N.M. at 248, 991 P.2d at 992) (alterations in original).

Given the factual record before the Court, it is clear that Officer Townsend had, at the least, arguable probable cause to arrest Mr. Aragon. Plaintiff has in no way met his burden to show otherwise; in fact, in response to Officer Townsend's Motion, Plaintiff has relied merely on allegations and denials in his own pleadings and has not set forth specific facts, supported by affidavits or as otherwise provided by FED. R. CIV. P. 56, showing a genuine issue for trial.

The belt audiotape, which apparently was recorded by Officer Townsend during the altercation and is submitted by Mr. Aragon in support of his Motion for Summary Judgment, is the only evidence Mr. Aragon offers in opposition to Officer Townsend's Motion. In his own Motion for Partial Summary Judgment, Plaintiff argues that "the audiotape stands for the exoneration of Plaintiff of any charges of disorderly conduct and for the proposition that the tape definitively shows that the officers had no probable cause to arrest [him] for disorderly conduct," relying on *Scott v. Harris*, 550 U.S. 372 (2007). (*See* Pl.'s Mot. 1-2.) The Court, however, is unconvinced.

First, no party to this action has authenticated this recording, although the Court notes that Officer Townsend has not objected to its submission. Additionally, the evidentiary value of the audiotape, as offered, bears no relationship to that of the videotape in *Scott*. The videotape there "quite clearly contradict[ed] the version of the story told by [plaintiff]," leading the Court to conclude that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 378, 380. Here, by contrast, the audiotape records what quickly turns into a very chaotic event with many unidentified voices talking, shouting, and screaming, often over each other, from different areas of the apartment complex, both close and distant from Officer Townsend and his recording equipment, overlaid at times by what sound like police radio dispatches. Plaintiff has given the

Court no assistance in trying to interpret the audiotape, either by deposition testimony or transcription. As such, the Court finds that the audiotape does not in anyway establish either that Defendant Townsend is not entitled to qualified immunity or that Plaintiff is entitled to summary judgment. *Cf. York*, 523 F.3d at 1210-11 (proponents of audiotape overstate relevance of *Scott*; tape captures only part of incident and portions are unintelligible; does not establish entitlement to summary judgment).

Plaintiff also relies on the fact that Officer Townsend was able to identify only Jaime Ugarte's voice using profanity on the audiotape, not Mr. Aragon's. (Pl.'s Mot., SUF No. 10.) This, however, does not necessarily establish that Mr. Aragon did not use profanity. As discussed above, the audiotape is in large part an undeciphered, and perhaps undecipherable, record of these events. Additionally, Plaintiff not only fails to support his allegation that he did not use profanity by anything more than argument, but actually has submitted exhibits containing evidence to the contrary. (*See* Pl.'s Mot, Ex. 3, Def. Moore's Answers Pl.'s Interrogs. No. 2 ("I also observed two males, later identified as Jeremiah Aragon and Jamie Ugarte, yelling profanities at Officer Townsend from the balcony."), No. 3 ("I went to the balcony where I had observed Mr. Aragon yelling profanities at Officer Townsend."), No. 4 ("Upon my arrival, he [Mr. Aragon] was shouting profanities at Officer Townsend from the balcony."), No. 7 (same as No. 2), No. 8 ("Mr. Aragon was on the balcony overlooking Officer Townsend, yelling profanities.").) Furthermore, in his deposition testimony, Officer Townsend described not only general shouting of profanity by Plaintiff and Mr. Ugarte (Def. Townsend's Resp. (Docket No. 33) Ex. A 23:14-20), but also recalled a specific instance of profanity he heard Mr. Aragon say (*id.* 24:14-20).

The Court, then, accepts Officer Townsend's version of the events, which is not contradicted, much less "blatantly contradicted," by the audiotape or any other admissible evidence put forth by

8

Plaintiff.  It is clear then, considering the totality of the circumstances, that Officer Townsend is entitled to qualified immunity, as a reasonable officer in his position could have believed probable cause existed to arrest Plaintiff for disorderly conduct.  First, Mr. Aragon's conduct falls within at least one of the categories enumerated by the statute by being abusive, profane, unreasonably loud, or otherwise disorderly, and does so even the Court were to accept his bare allegation that he did not use profanity.  Secondly, Plaintiff's conduct, measuring its actual and potential effect on others, certainly tended to disturb the peace.  The evidence shows that his loud and angry protestations and conduct actually incited listeners to breach the peace by potentially causing violence or other serious public disruption.  Plaintiff attempted to confront Officer Townsend as he struggled to control Ms. Ugarte, only being deterred by the threat of pepper spray, and his continued protestations actually incited at least two others also to attempt to confront the Officer, or at the least, arguably contributed to their behavior.  *Cf. Hawkins*, 128 N.M at 247-48, 991 P.2d at 991-92 and cases cited therein.  This is not a case in which a belligerent arrestee is charged with disorderly conduct, in addition to the underlying charges, because a crowd gathers, nor is it just a matter of Plaintiff's expression addressed at a police officer, who in New Mexico is held to a higher standard of tolerance for abuse or offensive language.  *See id.* at 248, 991 P.2d at 992.  Rather, here Plaintiff actually attempted to confront the officer and his conduct and expression contributed to others attempting to do likewise, so that the officer's safety was at issue.  *See id.* (citing *Marsh v. State*, 724 So. 2d 666, 666 (Fla. Dist. Ct. App. 1999) and noting parenthetically, "affirming conviction for disorderly conduct where evidence 'established that the defendant's loud, belligerent, accusatory tirade . . . was such that it excited the gathering crowd' to the point that the officers' safety became a concern").

The Court also will grant Officer Townsend qualified immunity on Plaintiff's retaliatory arrest claim. Given that Officer Townsend had probable cause to arrest Mr. Aragon for disorderly conduct, it is questionable whether Plaintiff even can state a First Amendment violation. *Cf., Hartman v. Moore*, 547 U.S. 250, 265-66 (2006) (plaintiff must plead and prove absence of probable cause for retaliatory prosecution claim). The Tenth Circuit has yet to decide whether *Hartman* applies to a retaliatory arrest claim, *see Titus v. Ahlm*, 297 F. App'x 796, 801-02 (10th Cir. 2008) (noting that "at least one circuit has held that a plaintiff pressing a retaliatory arrest claim need not plead the absence of probable cause in order to prevail," but finding claim failed on other grounds). Even if it were to decide, however, that a retaliation claim could be brought despite there being probable cause for the arrest, such a right was not clearly established at the time of Plaintiff's arrest. *See id.*; *cf. Skoog v. County of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006) ("At the time of the search, the right we have just defined[, to be free of police action for which retaliation is a but-for cause even if probable cause exits for that action,] was far from clearly established in this Circuit or in the nation. . . . At some future point, this right will become clearly established in this Circuit. [Officer] violated no clearly established law because probable cause existed for the search."). *But cf. Dietrich v. John Ascuagea's Nugget*, 548 F.3d 892, 901 & n.5 (9th Cir. 2008) (noting that *Skoog* acknowledged majority of circuits considering issue did not limit Hartman to cases involving "rataliatory prosecution claims," and that Ninth Circuit has expanded reach of *Hartman* to certain Fourth Amendment cases because "we saw 'no reason to limit *Hartman's* probable cause requirement solely to First Amendment *retaliatory arrest* and prosecution cases'") (quoting parenthetically *Beck v. City of Upland*, 527 F.3d 853, 864 (9th Cir. 2008) (emphasis added)).

Having found that Officer Townsend is entitled to qualified immunity, Plaintiff's Motion for Partial Summary Judgment must be denied as to Officer Townsend. The Court also will deny Plaintiff's Motion as to Officer Moore. While the facts are undisputed—Officer Moore entered Plaintiff's home to arrest him for a misdemeanor violation, without consent or a warrant—the Court cannot find that Plaintiff is entitled to summary judgment as a matter of law. *See Sanchez v. Ulibarri*, 308 F. App'x 280, 284-85 (10th Cir. 2009) (both New Mexico and federal law permit warrantless arrest if officer has probable cause to believe misdemeanor has been committed in his presence; exigency may exist when there is need to prevent suspect's escape; suspect may not thwart otherwise proper arrest set in motion in public by fleeing and retreating to his home; entry and arrest supported by probable cause and exigent circumstances, so Fourth Amendment issue meritless); *see also Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985) ("Under the 'fellow officer' rule, 'probable cause is to be determined by the courts on the basis of the collective information of the police involved in the arrest, rather than exclusively on the extent of the knowledge of the particular officer who may actually make the arrest.'") (quoting *United States v. Troutman*, 458 F.2d 217, 220 (10th Cir.1972)).

An Order in accordance with this Memorandum Opinion shall be entered contemporaneously.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**